FILED

2009 Jun-03  PM 03:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| VIRGINIA BENTLEY SHANAHAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 7:08-CV-00087-LSC |
| | ) | |
| THE LAFAYETTE LIFE INS. CO., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration a motion for summary judgment, which was filed by the defendant, The Lafayette Life Insurance Company ("LLIC"), on November 24, 2008.  (Doc. 24.)  Plaintiff Virginia Bentley Shanahan ("Shanahan") sued LLIC for breach of contract, quantum meruit, accounting, abuse of process, malicious prosecution, libel/slander, suppression, and conspiracy with regard to LLIC's alleged failure to pay her commissions and a subsequent lawsuit LLIC filed against her in the Circuit Court for Madison County, Alabama.  LLIC filed a counterclaim against Plaintiff for breach of contract, claiming Shanahan has outstanding debt

with the company.  The issues raised in Defendant's motion have been briefed by both parties and are ripe for review.  Upon full consideration of the legal arguments and evidence presented, LLIC's motion for summary judgment will be granted in part and denied in part.

II.    Related Motions.

As a preliminary matter, the Court will address motions and/or objections that have been filed by the parties with regard to the arguments and evidence submitted for consideration at summary judgment.  Plaintiff filed a motion for leave to submit a surreply (Doc. 40), to which LLIC subsequently filed an objection (Doc. 42).  Plaintiff has also requested the Court strike the affidavit of Michael Salla ("Salla"), which was submitted by LLIC in support of summary judgment, for alleged lack of personal knowledge and lack of proper foundation.  (Doc. 38 at 15-19.)

A.    Surreply.

On March 6, 2009, Plaintiff filed a motion for leave to submit a surreply, contending that Defendant proffered "additional evidence, new facts and argument" in its reply memorandum.  At first, the surreply takes issue with Defendant refiling Salla's affidavit with an attached "Exhibit A"

in its reply.  Thereafter, Plaintiff submits three and a half pages of legal argument addressing issues raised in Defendant's initial summary judgment brief, which Plaintiff never made nor mentioned in her response.  In fact, Plaintiff's response memorandum does not include any legal argument regarding the elements of her individual claims; instead, Plaintiff only argues that the Salla affidavit is improper and Defendant has not met their "initial burden."  (Doc. 38 at 14-19.)

"A district court's decision to permit the filing of a surreply is purely discretionary and should generally only be allowed when 'a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief.'" *First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 Fed. Appx. 777, 788 (11th Cir. 2008) (quoting Fedrick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005)).  Other circuits "have held that a district court can abuse its discretion by failing to give the opposing party a chance to respond to materials presented for the first time in a reply brief and instead granting summary judgment on the basis of that evidence." *Id.*  (citing *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir.2003) (finding that the district court

"abused its discretion to the extent it relied on new evidentiary materials presented for the first time in" a summary judgment reply brief); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir.1996) (determining that the district court should have given the nonmoving party an opportunity to respond to new evidence raised in the reply to a motion for summary judgment)). Moreover, this Court's Summary Judgment Scheduling Order, entered December 4, 2008, informed the parties that "[s]ur-reply briefs are not permitted, except upon leave of Court." (Doc. 27.)

The arguments in sections II, III and IV of Plaintiff's proposed surreply are not responses to newly-filed evidence or new legal arguments in Defendant's reply memorandum, and Plaintiff has not given this Court any reason to accept them as part of her surreply. Therefore, Plaintiff's motion for leave to file is DENIED with regard to sections II, III and IV, and those arguments will be disregarded by the Court. To the extent Plaintiff's surreply responds to Defendant refiling Salla's affidavit in its reply brief (pages 1-4) and concedes that LLIC is entitled to summary judgment on her conspiracy and defamation claims (page 11), Plaintiff's motion for leave to file is GRANTED.

B.    Affidavit of Michael Salla.

"A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e). "If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit." *Id*.

Plaintiff contends that the affidavit of Michael Salla ("Salla") should be stricken because (1) it does not establish that Salla is competent to testify to the matters therein; (2) the affidavit references an "Exhibit A," which was not attached to Defendant's first submission; and (3) other documents from which money amounts and other details may be derived are not identified nor attached to the affidavit.  Defendant argues that Salla's affidavit is legally sufficient because it states "that the following facts are within this affiant's personal knowledge," and that he is "employed by The Lafayette Life Insurance Company ("Lafayette Life") [as] Manager of Agents' Accounts."  (Salla Aff. at 1.)  Defendant also points out that while an "Exhibit A," was omitted, the documents referenced as part of "Exhibit A," were included in Defendant's evidentiary submission and served on the

plaintiff with Salla's affidavit.   LLIC also sought to correct the record, refiling the affidavit with its "Exhibit A" on February 27, 2009.  (Doc. 39.)

A "blanket statement within the first few paragraphs to the effect that the affiant has 'personal knowledge of the facts set forth in th[e] affidavit'" does not preclude a district court from finding all or part of the affidavit inadmissible.  *Pace v. Capobianco*, 283 F.3d 1275, 1279 (11th Cir. 2002). While Salla writes in his affidavit that he is Manager of Agents' Accounts and an employee of LLIC as of October 30, 2008, the date the affidavit was executed, he "does not state that he held the position of manager at the time of the occurrences which he discusses."  *Powell v. City of Key West, Fla.*, 434 F.2d 1075, 1080 (5th Cir. 1970).  It is not evident to the Court whether Salla has knowledge of the information discussed in his affidavit because he was present while these events occurred, or if he is getting the information from documents kept in the regular course of LLIC's business. If it is the latter, the affidavit should say so, and the dates, numbers, and other details discussed in the affidavit may be supported by attached documentation.  The affidavit does, however, identify and authenticate Shanahan's Agent's Contract and Commission Advance Supplement.  (Salla

Aff. ¶ 7.)  Plaintiff does not dispute the existence or accuracy of these documents, which she admits she signed with LLIC.

"The rule is settled that on a motion for summary judgment a court will disregard only the inadmissible portions of a challenged affidavit offered in support of or opposition to the motion and will consider the admissible portions in determining whether to grant or deny the motion." *Lee v. Nat'l Life Assur. Co. of Canada*, 632 F.2d 524, 529 (5th Cir. 1980).[1] Because Salla's affidavit does not show affirmatively that he is competent to testify to the matters in paragraphs 3-6 and 8-19 based on personal knowledge, or attach documentation showing that information therein comes from records kept in the regular course of LLIC's business, paragraphs 3-6 and 8-19 will be disregarded by the Court.  To the extent Plaintiff has requested the Court strike the affidavit as a whole, however, that request is DENIED.

While no objection has been raised, the Court notes that Defendant attached a second Salla affidavit, signed March 19, 2009, to its response to

---

[1]In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

Plaintiff's surreply as "pure rebuttal of Plaintiff's argument" therein. (Doc. 42 at 3.) While the Court accepts the refiling of Salla's original affidavit with a corrected exhibit to redress an earlier filing error, Defendant has not sought leave of the Court to file a new affidavit, which purports to identify and attach a new document regarding commission percentages. Filing new evidence at this stage of proceedings without leave of the Court and opportunity for the plaintiff to respond is improper. Therefore, the new Salla affidavit, filed on March 26, 2009, is STRICKEN from the record.

III.   Facts.[2]

Plaintiff Shanahan became an employee of Way & Company, an insurance agency, in or around January 1992. Way & Company is owned by Jack Way ("Way"), Plaintiff's now-husband.[3] Shanahan is licensed to sell insurance in a number of states, including Alabama, and she contracted with

---

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[3]Plaintiff married Way on July 22, 2005, so he was not her husband during the time period in question.

several national insurance companies to sell life and health insurance.

Shanahan signed a contract ("Agent's Contract" or "the Agreement") with defendant LLIC in early 2003 to sell insurance as an independent contractor.   Way did not sign a contract with LLIC.   Shanahan's Agent's Contract stated it was terminable at will by either party upon thirty days notice, and could be amended only by LLIC in writing.   Shanahan was paid by commission.   Commissions for a particular project varied and were negotiated on a case by case basis.   The Agent's Contract provided, however: "There shall be no vesting of commissions under this Agreement. Any and all commissions provided for under this Agreement shall immediately cease as of the date this Agreement terminates." (Doc. 26, Ex. C at 2.)

In October 2003, Shanahan and Way met with Camber Corporation ("Camber") to discuss group life insurance policies.   Camber subsequently agreed to purchase insurance from LLIC, and Shanahan served as the writing agent on the policies.

Shanahan's Agent's Contract with LLIC stated that she must remit all insurance premiums promptly to LLIC, and "keep all such premiums, which

shall be considered as collected in trust for [LLIC], separate from your personal or other business funds." (Doc. 26, Ex. C at 1.)  Shanahan claims, however, that she believed a new system was in place, and she "assumed" Camber's premiums "were being sent directly from Camber to Lafayette Life electronically."  (Pl. Dep. at 154.)  The premiums were not being sent directly to LLIC from Camber.  Instead, it is undisputed that Way collected Camber's premium payments, which were made payable to "The Lafayette Life Insurance Company"; deposited the checks in Way & Company's accounts at The Peoples Bank and Trust Company and First United Security Bank; and thereafter paid LLIC.

In time, however, payments from Camber to LLIC became overdue. When Camber's policies were about to lapse for underpayment, Way admitted to misappropriating the premium funds.  Shanahan testified that she had no knowledge of Way's actions, or that premium payments were being sent to Way & Company, until September 13, 2004.  That day, she made Way go with her to meet with Camber and discuss the misappropriation.  LLIC terminated the Agent's Contract with Shanahan, effective January 14, 2005, in a letter dated December 14, 2004.

Shanahan filed this lawsuit in the Circuit Court of Tuscaloosa County, Alabama, on January 16, 2007.   After a non-diverse defendant was dismissed, the action was removed to this Court on January 15, 2008.

IV.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving

party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

V.    Analysis.

On March 21, 2008, another member of this Court wrote a Memorandum of Opinion and Order dismissing Plaintiff's claims for malicious prosecution and abuse of process.  (Docs. 11, 12.)[4]  Defendant now moves

---

[4]Defendant made this Court aware that while the Memorandum of Opinion entered on March 21, 2008, held that Plaintiff's claims for malicious prosecution and abuse of process were due to be dismissed, the accompanying Order formally dismissed only the malicious prosecution claim.  Indeed, the Court acknowledged in its Opinion that Plaintiff conceded her abuse of process claim should be dismissed.  (Doc. 11 at 3.)  This omission will be cured in the Order issued contemporaneously with this Opinion.

for summary judgment on Plaintiff's claims of breach of contract, quantum meruit, accounting, libel/slander, suppression, and conspiracy, as well as Defendant's counterclaim for breach of contract. Plaintiff has indicated she "concedes to the [LLIC] position as to conspiracy and defamation on the present record" (Doc. 40 at 11); therefore, these claims will be dismissed without further discussion. The remaining claims are addressed, in turn, below.

A.    Plaintiff's Breach of Contract and Related Claims.

In the Complaint, Plaintiff contends that LLIC breached its Agent's Contract with her by failing to pay her commissions due and wrongfully terminating their business relationship. (Compl. ¶¶ 23-29.) Shanahan also alleges an alternative claim that unpaid commissions were due under theories of quantum meruit or implied contract (*id*. ¶ 28), and requests an "accounting" of premiums collected by LLIC after it stopped paying her commissions (*id*. ¶ 29).

Plaintiff does not refute Defendant's assertion that an "accounting" is not an independent cause of action. (Doc. 25 n.11 (citing *Johnson v. Pullman*, 845 F.2d 911, 913 (11th Cir. 1988); *Boyett's, Inc. v. Gross*, 163 So.

2d 610, 617 (Ala. 1964).)  Because Shanahan fails to make any argument regarding her "accounting" claim in response to Defendant's motion for summary judgment, the Court finds that Plaintiff's accounting claim has been abandoned.  *See, e.g., Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.")

Similarly, Plaintiff does not address Defendant's argument that her quantum meruit and implied contract claims are precluded because an express contract exists in this case.  (Doc. 25 at 11 (citing *Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006).)  Therefore, the Court also finds that these claims have been abandoned and are due to be dismissed.

With regard to Plaintiff's breach of contract claim, neither party addresses the choice of law provision included in the Agent's Contract, which provides: "This Agreement shall be governed by and interpreted in

accordance with the laws of the State of Indiana."  (Doc. 26, Ex. C at 4.)

"Alabama law has long recognized the right of parties to an agreement to

choose a particular state's laws to govern an agreement."  *Cherry, Bekaert*

*& Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991) (citing *Craig v. Bemis*

*Co.*, 517 F.2d 677 (5th Cir. 1975)).  "Alabama follows the principle of 'lex

loci contractus,' which states that a contract is governed by the laws of the

state where it is made except where the parties have legally contracted

with reference to the laws of another jurisdiction."  *Id*. (citing *Macey v.*

*Crum*, 30 So. 2d 666 (1947); *J.R. Watkins Co. v. Hill*, 108 So. 244 (1926)).

　　　"Under Indiana law, an 'at will' agency contract may be terminated

without cause or regardless of bad faith."  *Keystone Carbon Co. v. Black*,

599 N.E.2d 213, 216 (Ind. Ct. App. 1992) (citing *Miller v. Ortman*, 136

N.E.2d 17 (Ind. 1956)).  In *Keystone*, the Indiana appellate court concluded

that a contractual provision giving either party the right to terminate the

agreement for any reason upon the giving of sixty days written notice

constitutes an express "at will" provision.  *Id*.  Here, Shanahan's Agent's

Contract states: "You may terminate this Agreement by giving us thirty (30)

days prior written notice.  Likewise, we may terminate this Agreement by

giving you thirty (30) days prior written notice." (Doc. 26, Ex. C. at 3.)
Under Indiana law, therefore, Plaintiff has no cause of action for wrongful
termination of her employment under the Agent's Contract.

Turning to the alleged unpaid commissions, Defendant argues first that
Shanahan does not have standing to sue because she assigned her rights to
those commissions to a third party.  In support of that argument, LLIC
submits a purported assignment agreement signed by Shanahan on January
10, 2005.  (Doc. 26, Ex. L.)  The Agent's Contract proffered by the
defendant, however, states: "No assignment by you of this Agreement or of
any commission payable under this Agreement shall be valid unless approved
by us in writing."  (*Id.*, Ex. C at 3.)  Because LLIC has not produced any
evidence that it approved the assignment in writing, a question of fact exists
whether the alleged assignment was valid.  Therefore, Defendant has not
established that Shanahan lacks standing to sue for unpaid commissions.

Defendant addresses Plaintiff's claim that she is due commissions in
two parts: post-termination commissions, and pre-termination commissions.
The Court will do the same.  With regard to commissions for premiums
received after Shanahan's termination on January 14, 2005, the Agent's

Contract is clear: "There shall be no vesting of commissions under this Agreement.  Any and all commissions provided for under this Agreement shall immediately cease as of the date this Agreement terminates."  (Doc. 26, Ex. C at 2.)  "The terms of a contract are not ambiguous merely because controversy exists between the parties concerning the proper interpretation of terms."  *Kiltz v. Kiltz*, 708 N.E.2d 600, 602 (Ind. Ct. App. 1999) (citing *Tate v. Secura Ins.*, 561 N.E.2d 814, 819 (Ind. Ct. App. 1990)).  "Where the terms of a contract are clear and unambiguous, the terms are conclusive and we will not construe the contract or look at extrinsic evidence but will merely apply the contractual provisions."  *Id.* (citing *Jackson v. DeFabis*, 553 N.E.2d 1212, 1215 (Ind. Ct. App. 1990)).  Under the terms of the Agent's Contract, Shanahan is not entitled to commissions for premiums paid after her contract with LLIC was terminated.

With regard to the time period prior to the termination of the Agent's Contract, however, Defendant concedes that Plaintiff was not paid commissions on "premiums received by LLIC from Camber for the months of December 2004 and January 2005," or on the "funds recovered by LLIC on January 7, 2005, after making legal demands on First United Security Bank."

(Doc. 25 at 9.)  LLIC contends that these commissions were not payable under the Agent's Contract because Shanahan "was not servicing the Camber policy in a manner satisfactory to LLIC."  (*Id.* at 10.)

The Agent's Contract does provide that payment of commissions will be made only if Shanahan services the "group policies in a manner satisfactory to [LLIC]."  (Doc. 26, Ex. C at 2.)  However, the only evidence establishing LLIC's belief that Shanahan serviced Camber's account in an unsatisfactory manner is the statement of Salla, which has been excluded from the Court's consideration for the reasons discussed earlier in this Opinion.  Moreover, while Defendant's counsel gives an explanation why Shanahan's service was unsatisfactory (Doc. 25 at 10 ("Understandably, it was not satisfactory to LLIC for Plaintiff to allow Jack Way, Plaintiff's husband and employer, to misappropriate $369,374.64 in premium payments from Camber . . . .")), there is no evidentiary support that this was LLIC's rationale.  There remains, therefore, a question of fact whether Shanahan is entitled to these "pre-termination" commissions.

B.    Plaintiff's Suppression Claim.

Shanahan has also sued LLIC for concealing and/or failing to tell her

that Camber's premium payments were being paid to Way & Company instead of directly to the defendant.  (Compl. ¶¶ 43-48.)  In the Complaint, Plaintiff contends that failure to disclose the manner of payment prevented her from "assuring premiums were properly and correctly billed and paid." (Compl. ¶ 46.)  Defendant maintains that it is entitled to summary judgment on Plaintiff's suppression claim because LLIC had no duty to disclose the information at issue; no suppression occurred; LLIC was not the proximate cause of Plaintiff's alleged damages; and the action is barred by the two-year statute of limitations.  (Doc. 25 at 13-19.)

Shanahan does not address the suppression claim in her response.  For the reasons given above, therefore, the Court concludes the claim has been abandoned.  *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000).  However, Plaintiff does argue suppression in a portion of the surreply that was disregarded by the Court. (Doc. 40 at 9-11.)  Out of an abundance of caution, then, the Court will briefly discuss the elements of Plaintiff's claim.

"The elements of a fraudulent-suppression claim are (1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of

material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury." *Ex parte Novartis Pharm. Corp.*, 991 So.2d 1263, 1276 (Ala. 2008) (internal quotations omitted). "The existence of a duty is a question of law to be determined by the trial judge." *Id.* Plaintiff has not established that she and LLIC were parties to a confidential relationship requiring disclosure. And, the Alabama Supreme Court "has often ruled that there is no duty to disclose facts when information is not requested." *Ex parte Life Ins. Co. of Ga.*, 810 So. 2d 744, 749 (Ala. 2001). In the deposition excerpts submitted to the Court, Shanahan testified that she "assumed" payments were being sent directly from Camber to LLIC. (Pl. Dep. at 154, 156.) Moreover, Plaintiff admitted she does not believe LLIC intentionally kept the information from her. (*Id.* at 171.) There is simply no evidence Shanahan made an inquiry that would invoke LLIC's legal duty to disclose that information. Therefore, the defendant is entitled to summary judgment with regard to Plaintiff's suppression claim.

C.    Defendant's Breach of Contract Claim.

LLIC filed a counterclaim against the plaintiff, which contends

Shanahan owes the company damages under the Agent's Contract.  (Doc. 21.)  Defendant has moved for summary judgment on this claim, for which it bears the burden of proof.  LLIC cites only Salla's affidavit statement, however, as evidence that Shanahan owed $50,655.21, "plus interest, costs and attorneys' fees," as of March 31, 2005.  (Doc. 25 at 20.)  This statement by Salla has been excluded by the Court as inadmissible.  Absent other supporting evidence, Defendant's motion for summary judgment on this claim will be denied.

V.    Conclusion.

    For the reasons set forth above, LLIC's motion for summary judgment will be granted in part and denied in part.  A separate order will be entered.

    Done this 3rd day of June 2009.

                                    _____
                                    L. SCOTT COOGLER
                                    UNITED STATES DISTRICT JUDGE
                                    153671